**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| Cincinnati Development III, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 1:18-cv-00586 |
| | ) | |
| vs. | ) | Judge Michael R. Barrett |
| | ) | |
| Cincinnati Terrace Plaza, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

**<u>OPINION AND ORDER</u>**

This case is about the sale of the real property located at 15 West Sixth Street Cincinnati, Ohio 45202 ("the Property").[1] (Doc. 5). The Property is formerly known as the Terrace Plaza Hotel. *Id.* This matter is before the Court on six motions.[2] First, this matter is before the Court on Plaintiff Cincinnati Development III, LLC's Motion for Partial Summary Judgment (Doc. 21) and the responsive briefing (Docs. 26, 27, 30). Second, this matter is before the Court on Defendant Cincinnati Terrace Associates, LLC's ("Buyer"[3]) Motion for Summary Judgment (Doc. 34) and the responsive briefing

---

[1] The legal description of the Property can be found at Document 5-1 PageID 268.

[2] Many of the parties' memoranda include all, or many, of their citations in footnotes. *But see* Standing Order on Civil Procedures, Michael R. Barrett, I.G. ("[A]ll briefs and memoranda shall comport with the following: . . . Citations to be in main body of text and not in footnotes.").

[3] The Court will refer to the purchaser of the Property as Buyer for ease of reference. However, and as explained in more detail below, Cincinnati Terrace Associates, LLC is a limited liability company that Cincinnati Terrace Member, LLC formed and acquired through the sale and purchase of membership interests. *See* (Doc. 13 ¶ 3); (Buyer "admits that it is an Ohio limited liability company, and, answering further, states that it was formed by Cincinnati Terrace Member LLC with the involvement and consent of [Seller], pursuant to a valid and enforceable written Membership Interest Purchase Agreement [ ]. Answering further, [Buyer] states that at the closing, [Seller] caused the Property to be conveyed into CTA as a capital contribution, and Cincinnati Terrace Member LLC purchased from [Seller] one hundred percent of the membership interests of CTA."); (Doc. 21-6 § 2(a) (" . . . [Cincinnati Terrace Member, LLC] agrees to purchase the Property through the acquisition of Cincinnati Terrace Associates LLC, an Ohio limited liability

(Docs. 38, 40). Third, this matter is before the Court on Defendant Cincinnati Terrace Plaza, LLC's ("Seller") Motion for Summary Judgment (Doc. 39) and the responsive briefing (Docs. 41, 43). Fourth, this matter is before the Court on Buyer's Motion to Strike. (Doc. 28). Although Plaintiff filed a Response in Opposition (Doc. 33), Buyer did not file a reply, and the time to do so has passed. *See* S.D. Ohio Civ. R. 7.2(a)(2). Fifth, this matter is before the Court on Plaintiff's Motion to Strike (Doc. 44) and the responsive briefing (Docs. 45, 46). Six, this matter is before the Court on Seller's Motion to Strike (Doc. 9) and the responsive briefing (Docs. 14, 16).

I. **MOTIONS TO STRIKE**

The Court will first consider Buyer's and Plaintiff's Motions to Strike, as the Court's ruling on those Motions will affect the record on summary judgment. *See Brainard v. Am. Skandia Life Assurance Corp.*, 432 F.3d 655, 667 (6th Cir. 2005) ("Generally, a district court should dispose of motions that affect the record on summary judgment before ruling on the parties' summary judgment motions.").

A party moving for or opposing summary judgment may cite certain materials in the record including affidavits or declarations. FED. R. CIV. P. 56(c)(1)(A). A responding party, who believes that such cited materials "cannot be presented in a form that would be admissible in evidence," may file an objection.[4] FED. R. CIV. P. 56(c)(2). "An affidavit

---

company formed by [Cincinnati Terrace Member, LLC] with Seller's involvement and consent, in which Seller will be the sole Member."); (Doc. 26-3, James Smith Decl.); *see also* (Doc. 30-1) (certificate from the Ohio Secretary of State).

[4] "Motions to strike should be construed as objections under Rule 56(c)(2)" of the Federal Rules of Civil Procedure. *Smith v. Interim HealthCare of Cincinnati, Inc.*, No. 1:10-CV-582, 2011 WL 6012971, at *4 (S.D. Ohio Dec. 2, 2011) ("[M]otions to strike are no longer appropriate under the 2010 amendments to Rule 56." (citing *Foreword Magazine, Inc. v. OverDrive, Inc.*, No. 1:10-CV-1144, 2011 WL 5169384, at *2 (W.D. Mich. Oct. 31, 2011))); *accord Jamal Stephenson, et al., v. Family Sols. of Ohio, Inc., et al.*, No. 1:18CV2017, 2021 WL 795551, at *5 (N.D. Ohio Mar. 2, 2021) ("As a threshold matter, the Court notes that a 'motion to strike' applies only to pleadings."); *see Stillwagon v. City of Delaware*, 274 F. Supp. 3d 714, 736-37 (S.D.

or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." FED. R. CIV. P. 56(c)(4). "An affidavit that does not satisfy these requirements . . . will not be considered by the Court in ruling upon a motion for summary judgment." *Giles v. Univ. of Toledo*, 241 F.R.D. 466, 469 (N.D. Ohio 2007) (citing *Reddy v. Good Samaritan Hosp. & Health Ctr.*, 137 F. Supp. 2d 948, 954 (S.D. Ohio 2000)). However, "the Court must only strike the inadmissible portions of an affidavit, rather than the whole affidavit." *Wilson v. Budco*, 762 F.Supp.2d 1047, 1057 (E.D. Mich. 2011).

Additionally, Federal Rule of Civil Procedure 56(h)[5] provides:

> If satisfied that an affidavit or declaration under this rule is submitted in bad faith or solely for delay, the court--after notice and a reasonable time to respond--may order the submitting party to pay the other party the reasonable expenses, including attorney's fees, it incurred as a result. An offending party or attorney may also be held in contempt or subjected to other appropriate sanctions.

Courts have found "bad faith" in the context of Rule 56 "where affidavits contained

---

Ohio 2017); *see also* FED. R. CIV. P. 56(c) (2010 Advisory Committee Notes) (explaining that the Rule 56(c)(2) objection "functions much as an objection for trial, adjusted for the pretrial setting . . . There is no need to make a separate motion to strike."). "If a party does file a separate motion to strike, the motion should be construed as an objection under Rule 56(c)(2)." *Stillwagon*, 274 F. Supp.3d at 737 (citing *Smith*, 2011 WL 6012971, at *4). Accordingly, the Court construes the parties' Motions to Strike as objections under Rule 56(c)(2).

[5]
> Subdivision (h) carries forward former subdivision (g) with three changes. Sanctions are made discretionary, not mandatory, reflecting the experience that courts seldom invoke the independent Rule 56 authority to impose sanctions. *See* CECIL & CORT, FEDERAL JUDICIAL CENTER MEMORANDUM ON FEDERAL RULE OF CIVIL PROCEDURE 56(G) MOTIONS FOR SANCTIONS (April 2, 2007). In addition, the rule text is expanded to recognize the need to provide notice and a reasonable time to respond. Finally, authority to impose other appropriate sanctions also is recognized.

FED. R. CIV. P. 56(h) (2010 Advisory Committee Notes).

perjurious or blatantly false allegations or omitted facts concerning issues central to the resolution of the case." *See Sutton v. U.S. Small Bus. Adm.*, 92 F. App'x 112, 118 (6th Cir. 2003) (quoting *Jaisan, Inc. v. Sullivan*, 178 F.R.D. 412, 415-16 (S.D.N.Y. 1998)). Awarding sanctions under Rule 56(h) is "rare" and the conduct involved generally must be "egregious." *Abdelkhaleq v. Precision Door of Akron*, 653 F. Supp. 2d 773, 787 (N.D. Ohio 2009) (citing *Jaisan*, 178 F.R.D. at 415).

### a. Buyer's Motion to Strike

Buyer moves to strike portions of paragraph 26 of Anthony Birkla's initial declaration and Exhibit A-11 thereto, a copy of a July 18, 2018 Cincinnati Business Courier article, and argues that Mr. Birkla improperly attempts to authenticate the article and that the article contains inadmissible hearsay. (Doc. 28). Mr. Birkla is an owner in Anderson Birkla Investment Partners and Plaintiff's sole managing member. (Doc. 21-1, Anthony Birkla Decl. ¶¶ 1-2). The Court declines to strike the copy of the July 18, 2018 article, as newspapers are self-authenticating pursuant to Federal Rule of Evidence 902(6). The Court also declines to strike paragraph 26 of the declaration, as Mr. Birkla's statements therein are offered as evidence that Mr. Birkla's interest in the Property was publicized, and are not offered for the truth of the matter asserted in the article, *i.e.*, Mr. Birkla actually had the Property under contract, or to prove that Buyer knew, or should have known, that Mr. Birkla had the Property under contract. *See* (Doc. 33).

Buyer also moves to strike paragraphs 24 and 25 of Mr. Birkla's initial declaration and Exhibits A-8, A-9, and A-10—each an email from Andy Scott to either Michael Galasso or Mr. Galasso and his client—attached to Mr. Birkla's declaration. (Doc. 28). Mr. Galasso is one of the attorneys who represented Seller with respect to the sale of the

Property and currently before this Court. (Doc. 7, Michael Galasso Decl. ¶ 3); (Doc. 26-2, Michael Galasso Supp. Decl. ¶ 3). Mr. Scott's relationship with the various parties and role in the sale of the Property is not clear.[6] Buyer argues that Mr. Birkla cannot authenticate his statements in paragraphs 24 and 25 or the exhibits, because he was not the author or a recipient of the three emails. *Id.* The Court does not question that the three emails are properly authenticated, as Mr. Galasso is a recipient of each of the emails and Seller does not challenge their authenticity. *See* (Doc. 26 PageID 777) (challenging only Mr. Birkla's ability to authenticate the emails); *cf.* FED. R. EVID. 901(b)(4). However, Buyer also argues that the three exhibits contain inadmissible hearsay (Doc. 28), and Plaintiff concedes that paragraphs 24 and 25 and Exhibits A-8, A-9, and A-10 are not necessary for purposes of Plaintiff's argument on summary judgment (Doc. 33 PageID 1094,1099).The Court will not consider paragraphs 24 and 25 of Mr. Birkla's initial declaration and Exhibits A-8, A-9, and A-10 thereto at this juncture.

    **b. Plaintiff's Motion to Strike**

Plaintiff moves to strike Ezra Unger's entire declaration and for an award of attorney's fees and argues that Buyer submitted Mr. Unger's declaration in bad faith and to delay this matter. (Doc. 44). Mr. Unger signed the June 12, 2018 Membership Interest Purchase Agreement, discussed in more detail below, between Seller and Buyer as the Manager of Cincinnati Terrace Member LLC. (Doc. 21-6 PageID 648). Mr. Unger is also affiliated with JNY Capital LLC. *See* (Docs. 44-1, 44-2). JNY Capital is a New York-based company that, along with Cincinnati Terrace Associates, LLC, currently controls the Property. *See* (Doc. 37-1) (Hamilton County Court of Common Pleas, case number A

---

[6] *See, e.g.,* (Doc. 21-1, Birkla Decl. ¶ 11); (Doc. 26-2, Galasso Supp. Decl. ¶¶ 4, 6-15, 18-23); (Doc. 33-1); (Doc. 34-1, Ezra Unger Decl. ¶ 13); (Doc. 38-4); (Doc. 38-5).

1901286, Complaint).[7]

Mr. Unger declared, under penalty of perjury, that, "[p]rior to Closing, I was unaware of any media coverage related to [Plaintiff]'s purposed contract with [Seller] and, specifically, I was not aware of the news article attached to Anthony Birkla's declaration at Exhibit A-11." (Doc. 34-1, Unger Decl. ¶ 15). Exhibit A-11 of Mr. Birkla's declaration is the July 18, 2018 Cincinnati Business Courier article. (Doc. 21-12). Stephen Friedman, Mr. Unger's attorney who represented Mr. Unger in the purchase of the Property, declared, under penalty of perjury, that, on July 19, 2018: Mr. Friedman received an inquiry from his client's employee regarding the July 18, 2018 Cincinnati Business Courier article; that article indicated to Mr. Friedman that Mr. Birkla had the Property under contract; Mr. Friedman was advised that the article was not accurate; and Mr. Friedman reported that the article was not accurate to his client. (Doc. 45-2, Stephen Friedman Decl. ¶¶ 1, 3-4, 5-6, 8). Assuming, as Mr. Friedman states, that Mr. Unger is Mr. Friedman's client, it is not clear how Mr. Unger was unaware of the July 18, 2018 Cincinnati Business Courier article prior to August 1, 2018 closing on the Property in light of Mr. Friedman's declaration that Mr. Friedman reported to Mr. Unger that the article was not accurate on July 19, 2018. Nevertheless, the Court is not convinced that Buyer submitted Mr. Unger's declaration in bad faith or solely for delay, based on the documents and arguments presented thus far, and will neither strike the declaration nor order sanctions. *See* FED. R. CIV. P. 56(h). If warranted, the Court can revisit its decision

---

[7] "Federal courts may take judicial notice of proceedings in other courts of record." *Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d 736, 738 (6th Cir. 1980). In this state court matter, initiated in March 2019, the City of Cincinnati sued Buyer and JNY Capital for public nuisance, nuisance, building code violations, and failure to obtain a vacated and condemned building license for the Property. *See id.*

regarding sanctions in the future. *Cf.* FED. R. CIV. P. 11; FED. R. CIV. P. 26(g)(3).

## II. <u>BACKGROUND</u>

### a. June 2018

On June 1, 2018,[8] Plaintiff and Seller entered into a Membership Interest Purchase Agreement[9] for the sale of the Property ("Plaintiff Contract"). (Doc. 5-1 Exh. A PageID 255-76). The Plaintiff Contract contemplates a sale of the Property structured by way of a contribution deed that would transfer the Property from Seller to a yet-to-be-formed Ohio LLC and then Seller would transfer ownership of membership interests in that LLC to Plaintiff. (*Id.* § 2). Stated otherwise, Seller would sell, and Plaintiff would buy, membership interests in a newly formed LLC that held the deed to and owned the Property. (*Id.*) This transaction structure would be exempt from Ohio transfer taxes. *Id.*

The purchase price for ultimate control over the Property under the Plaintiff Contract is $9,500,000.00, and is to be paid by a combination of an earnest money deposit and a wire transfer of the balance of the purchase price. (*Id.* §§ 2, 4). A portion of the Plaintiff Contract titled "Purchase and Sale" section is incomplete. It reads:

> Within five business days after the Effective Date of this Agreement Purchaser shall deposit $150,000 ("Earnest Money") into an escrow account titled jointly in the names of Michael A. Galasso (Seller's counsel) and _____ (Purchaser's counsel). Seller's counsel and Purchaser's counsel shall collectively serve and be referred to herein as "Escrow Agent." The signature of both Seller's counsel and Buyer's counsel shall be required for all withdrawals from the escrow account. The escrow account shall be opened and held at Huntington National Bank, or such

---

[8] Plaintiff and Seller agreed to amend the Effective Date of the Plaintiff Contract from May 23, 2018 to June 1, 2018. (Doc. 5 ¶ 18) ("The Effective Date was then struck through by the parties, and a new date of June 1, 2018 was implemented."); (Doc. 7, Galasso Decl. ¶ 8); (Doc. 21-1, Birkla Decl. ¶ 5); (Doc. 21-3); (Doc. 32 ¶ 18) ("[Seller] admits that the Effective Date of the referenced agreement was June 1, 2018 and denies all other allegations in Paragraph 18.").

[9] In June 2017, Plaintiff and Seller entered into a Membership Interest Purchase Agreement for the sale of the Property, but that agreement expired. (Doc. 7, Galasso Decl. ¶¶ 5-6); (Doc. 41-1, Birkla Supp. Decl. ¶ 2).

other bank as Seller's counsel and Buyer's counsel may agree.

(*Id.* § 2). Similarly, the signature on the Plaintiff Contract for the collective "Escrow Agent" contains only Mr. Galasso's signature. (*Id.* PageID 267).

The Plaintiff Contract allows Plaintiff "60 days after the Effective Date to investigate the Property," and this 60-day period is titled the "Inspection Period."[10] (*Id.* § 4). Regarding closing on the Property, the Plaintiff Contract states that, "[p]rovided that [the Plaintiff Contract] is not terminated prior to the expiration of the Inspection Period, the parties hereto agree to close this purchase and sale (the "Closing") within thirty (30) days after the expiration of the Inspection Period." (*Id.* § 7).

In a section titled "Failure to Close," the Plaintiff Contract provides that, in the event that the parties failed to close on the Property due to Seller's breach, Plaintiff, at its option, may either (1) "elect to enforce the terms [of the Plaintiff Contract] by action for specific performance, and/or exercise any other right or remedy available to it at law or in equity" or (2) "terminate th[e Plaintiff Contract] by notice to Seller and receive a refund of the Earnest Money plus reimbursement from" Seller not to exceed $50,000.00. (*Id.* § 11).

The Plaintiff Contract permits Seller to "continue to market the Property for sale until the Closing has occurred." (*Id.* § 12). At the same time, the Plaintiff Contract includes a right of first refusal to Plaintiff and a right to terminate to Seller. (*Id.* PageID 273) ("This [Agreement Granting Right of First Refusal and Right to Terminate] amends and is part of the Purchase Contract."); *cf.* (*Id.* § 19) ("This [Plaintiff Contract] may be executed in any number of counterparts, each of which shall be an original, but all of which together shall constitute one instrument.").

---

[10] 60 days after June 1, 2018 is July 31, 2018.

With respect to Plaintiff's right of first refusal, the Plaintiff Contract states that, "[i]f Seller agrees to sell the Property . . . to a third party before the expiration of the Inspection Period, Seller shall provide notice of the closing to P[laintiff] and P[laintiff] may purchase the Property upon the same terms and conditions as the third party buyer's." (*Id.* PageID 273). With respect to Seller's right to terminate, the Plaintiff Contract stated that "Seller may terminate the Purchase Contract at any time during the Inspection Period, by providing P[laintiff] with written notice of termination" and, within ten days of that written termination notice, Seller must pay Plaintiff $100,000.00. (*Id.*) It provides that "[t]he [$100,000.00] Termination Fee shall serve as liquidated damages under the P[laintiff Contract], and shall be P[laintiff]'s sole remedy for Seller's failure to perform under the Purchase Contract." (*Id.*).

The Plaintiff Contract includes a section titled "Representations and Warranties of Seller" in which "Seller represents, warrants, and acknowledges to Purchaser that . . . Between the date hereof and the Closing, no part of the Property will be alienated, encumbered, or transferred in favor of or to any party whatsoever." (*Id.* § 13(g)). The Plaintiff Contract includes a section titled "Further Assurances" in which Plaintiff and Seller "agree[d] to furnish to each other upon request, such further information as the other party may reasonably request for the purpose of carrying out the intent of this Agreement." (*Id.* § 21). Moreover, the Plaintiff Contract requires that "[a]ny notice to be given under this Agreement shall be in writing and sent by certified mail." (*Id.* § 25).

The Plaintiff Contract "constitutes the parties' entire agreement and no oral or implied agreement exists [and a]ny amendments to this Agreement shall be made in writing, signed by all parties." (*Id.* § 17). Certain exhibits attached to the Plaintiff Contract

are incomplete. (Doc. 5-1 PageID 269-272) ("Schedule of Existing Tenants," "Form of Estoppel Certificate," "Form of Assignment of Membership Interest," "Form of Assignment of Leases"). Mr. Birkla signed for Plaintiff, and Seller's director, Harris Stasis, signed for Seller. (*Id.* PageID 266-67, 273-76); *see* (Doc. 21-1, Birkla Decl. ¶¶ 1-2). Plaintiff was formed for the purpose of acquiring the Property. *Id.*

Plaintiff did not deposit earnest money into an escrow account anytime in June 2018, and the parties did not jointly open an escrow account at Huntington National Bank, or any other bank.[11] (Doc. 5-1 ¶ 25); (Doc. 7, Galasso Decl. ¶ 21); (Doc. 21 PageID 537 n.20, 538-39); (Doc. 26 PageID 782 n.42).

On June 12, 2018, Seller and Buyer entered into a Membership Interest Purchase Agreement for the sale of the Property ("Buyer Contract"). (Doc. 21-6). As with the Plaintiff Contract, the Buyer Contract contemplated a sale of the Property structured by way of a contribution deed. Under the Buyer Contract, the Property would transfer from Seller to Cincinnati Terrace Associates, LLC—a limited liability company formed by Cincinnati Terrace Member LLC, in February 2018, with Seller's involvement and consent, and of which Seller was the sole Member—and, in turn, transfer ownership of Cincinnati Terrace Associates, LLC to Cincinnati Terrace Member LLC. (*Id.* § 2); (Doc. 13 ¶ 3) ("Defendant [Cincinnati Terrace Associates LLC] admits that it is an Ohio limited liability company, and, answering further, states that it was formed by Cincinnati Terrace Member LLC with the involvement and consent of [Seller], pursuant to a valid and enforceable written Membership Interest Purchase Agreement []."); (Doc. 30-1) (certificate from the Ohio

---

[11] The lapsed June 2017 Membership Interest Purchase Agreement for the sale of the Property between Plaintiff and Seller had completed escrow terms and, under that contract, Plaintiff placed the agreed amount in an escrow account at Riverbend Commercial Title Agency. (Doc. 7-1) (June 2017 Membership Interest Purchase Agreement); (Doc. 41-1, Birkla Supp. Decl. ¶ 3); (Doc. 41-1, PageID 1392).

Secretary of State). In short, Seller would sell, and Buyer would buy, membership interests in Cincinnati Terrace Associates, LLC, the company that would own the Property. (Doc. 21-6 § 2).

The purchase price for ultimate control over the Property under the Buyer Contract is $11,000,000.00. *Id.* The purchase price is to be paid by a wire transfer of immediate funds at closing. *Id.* There is no reference to an earnest money requirement; however, Buyer is to, simultaneously with the execution of the Buyer Contract, deposit a non-refundable $250,000.00 deposit in an account designated by Seller that will either be applied to the purchase price at closing or kept by Seller in the event that the transaction does not close. *Id.*

The Buyer Contract does not include an inspection period provision. (Doc. 21-6). Regarding closing on the Property, the Buyer Contract states that, "[t]he parties hereto agree to close this purchase and sale (the "Closing") within forty-five (45) days of the date of this Agreement such date of closing, the "Closing Date")."[12] (*Id.* § 6). The Buyer Contract contains "Representations and Warranties of Seller," including that:

> Between the date hereof and the Closing, no part of the Property will be alienated, encumbered, or transferred in favor of or to any party whatsoever, and the Leases will not be amended or modified in any manner. There are no purchase contracts, options, or any other agreements of any kind, oral or written, formal or informal, choate or inchoate, recorded or unrecorded, whereby any person or entity other than Seller will have acquired or will have any basis to assert any right, title, or interest in, or right to possession, use, enjoyment or proceeds of, any part or all of the Property.

(*Id.* § 12). The exhibits attached to the Buyer Contract are complete. (*Id.* PageID 650-82).

Mr. Unger signed for Buyer as the Manager of Cincinnati Terrace Member LLC, and Mr. Stasis signed for Seller. (Doc. 21-6 PageID 648-49). Mr. Unger is the managing

---

[12] 45 days after June 12, 2018 is July 27, 2018.

member of Cincinnati Terrace Associates, LLC; is the managing member of Cincinnati Terrace Member LLC; created Cincinnati Terrace Member LLC, for the sole purpose of acquiring the Property; and is also affiliated with JNY Capital LLC. (Doc. 34-1, Unger Decl. ¶¶ 1, 5); *see* (Docs. 44-1, 44-2).

Turning back to the Plaintiff Contract, on June 14, 2018, Seller's attorney, Mr. Galasso, emailed one of Plaintiff's attorneys stating that Seller had approved changing the Plaintiff Contract's effective date from June 1, 2018 to June 11, 2018 and asked if Plaintiff's attorney wanted to discuss that effective date change at the same that that they discuss the exhibits to the Plaintiff Contract. (Doc. 5-1 PageID 277); (Doc. 26-2, Galasso Supp. Decl. ¶ 3).

### b. July 2018

On July 9, 2018, one of Plaintiff's attorneys emailed Mr. Galasso requesting that he review two documents: a revised version of the Plaintiff Contract and a Blackline document indicating the difference between the Plaintiff Contract and the revised version. (Doc. 21-7). Plaintiff's attorney noted that Plaintiff had not reviewed the two documents and reserved the right to make any additional changes that Plaintiff requested. *Id.* The revised version included a June 11, 2018 effective date; an agreement that Plaintiff would deposit earnest money into an escrow account with Commonwealth Land Title Insurance Company; a statement that the Commonwealth Land Title Insurance Company would serve as the Escrow Agent; and complete exhibits. *Id.* The parties did not enter into the revised version.

On July 18, 2018, Mr. Birkla and Mr. Galasso had a meeting.[13] (Doc. 21-1, Birkla

---

[13] Mr. Birkla and Mr. Galasso provide contrasting accounts regarding what occurred during, and were the main subjects of discussion in, that meeting. *Compare* (Doc. 21-1, Birkla Decl. ¶¶ 10-11) (stating that

Decl. ¶¶ 10-11); (Doc. 26-2, Galasso Supp. Decl. ¶¶ 16-24).

On July 19, 2018, Mr. Friedman received an inquiry from Mr. Unger's employee regarding the July 18, 2018 Cincinnati Business Courier article that Mr. Friedman thought indicated that the Property was under contract with Mr. Birkla. (Doc. 45-1); (Doc. 45-2, Friedman Decl. ¶¶-4 3). Mr. Friedman "immediately followed up and inquired as to whether the Property was under contract with another person or entity," and "was advised that the article was not accurate and that [the Buyer C]ontract to purchase the Property was the only contract on the Property." (*Id.* ¶¶ 4-5). Mr. Friedman reported to his "client that the Cincinnati Business Courier article was not accurate." (*Id.* ¶ 6).

On July 29, 2018, Mr. Galasso emailed one of Plaintiff's attorneys stating that he wanted to confirm how long of an extension of the Inspection Period under the Plaintiff Contract Plaintiff was asking for. (Doc. 5-1 PageID 284).

During the morning of July 30, 2018, Mr. Galasso appeared in the Court of Common Pleas for Hamilton County, Ohio on behalf of Seller regarding building code violations against the Property filed by the City of Cincinnati in case number A 1706283. (Doc. 21-4 PageID 583-84).[14] Mr. Galasso, while presenting oral argument to the state court, stated that the Property was under contract to Anderson Birkla and explained that, in light of that likely transfer of the Property to Mr. Birkla, many of the alleged building code violations against Seller in that state court matter would soon become moot.

---

Plaintiff wanted assurances that Plaintiff would be accorded its right of first refusal); *with* (Doc. 26-2, Galasso Supp. Decl. ¶¶ 16-24) (stating that Plaintiff wanted to discuss city incentives, Andy Scott, and the need for additional time and that Plaintiff's right of first refusal was not discussed).

[14] *See Rodic*, 615 F.2d at 736; *accord Munno v. Town of Orangetown*, 391 F. Supp. 2d 263, 268 (S.D.N.Y. 2005) (courts may take judicial notice of "admissions in pleadings and other documents in the public record filed by a party in other judicial proceedings that contradict the party's factual assertions in a subsequent action.") (citation and quotation omitted); *cf.* FED. R. EVID. 801(d)(2)(D).

(Doc. 21-4 PageID 589-90, 593-95, 608, 625-26).

Also on July 30, 2018, James Smith executed a Limited Warranty Deed that ultimately resulted in the transfer of the Property from Seller to Buyer. (Doc. 26-3, Smith Decl. ¶¶ 4-5). Mr. Smith's law firm represents Seller and he specifically represented Seller in connection with the transfer of the Property. (*Id.* ¶¶ 3-4). Mr. Galasso's law firm prepared the Limited Warranty Deed that Mr. Smith executed on July 30, 2018. (Doc. 5-1 PageID 285). Later on July 30, 2018, the Limited Warranty Deed for the Property was delivered, at Mr. Smith's direction, in escrow. (Doc. 26-3, Smith Decl. ¶¶ 5-6).

The Inspection Period for the Plaintiff Contract expired on July 31, 2018. (Doc. 5-1 Exh. A).

### c.  August 2018

On August 1, 2018, the closing for the sale of the Property occurred under the Buyer Contract, and an authorized escrow agent released the escrowed documents and delivered the Limited Warranty Deed. (Doc. 26-3, Smith Decl. ¶¶ 7-8). The sale of the Property was structured by way of a contribution deed that transferred the Property from Seller to Cincinnati Terrace Associates, LLC and, in turn, transferred ownership of Cincinnati Terrace Associates, LLC to Cincinnati Terrace Member, LLC. (*Id.* ¶ 4). The contract price was $11,000,000.00. (*Id.* ¶ 9). Cincinnati Terrace Associates, LLC currently owns the Property, Cincinnati Terrace Member LLC owns 100% of the membership interests in Cincinnati Terrace Associates, LLC, and JNY Capital controls the Property along with Cincinnati Terrace Associates, LLC. (Doc. 37-1) (Hamilton County Court of Common Pleas, case number A 1901286, Complaint); (Doc. 56-1) (Hamilton County Court of Common Pleas, case number A 1905289, Buyer's Motion to Stay).

Also on August 1, 2018, Cincinnati Terrace Associates, LLC borrowed $7,000,000.00 from TBG Funding LLC ("Lender"), the loan was secured by the Property, and the loan was memorialized by a promissory note. (Doc. 67 ¶¶ 6-8 PageID 1794). Cincinnati Terrace Associates, LLC contemporaneously executed, in favor of Lender, a mortgage and an assignment of rents, each dated August 1, 2018. (*Id.* ¶ 9). The mortgage granted Lender a mortgage on the Property to secure all payments to be made by Cincinnati Terrace Associates, LLC under the note and the assignment granted a continuing security interest in, and conveyed to Lender, Cincinnati Terrace Associates, LLC's rights, title, and interest in and to the rents from the Property. (*Id.* ¶¶ 17-18).

On August 6, 2018, Plaintiff learned that Seller sold the Property to Buyer and Plaintiff made a deposit of $150,000.00 into an escrow account maintained by Commonwealth Land Title Insurance Company. (Doc. 21-1, Birkla Decl. ¶¶ 13, 22).

On August 7, 2018, Plaintiff initiated this lawsuit against Seller in the Court of Common Pleas for Hamilton County, Ohio. (Doc. 5). That same day, and despite the fact that Plaintiff obtained a Temporary Restraining Order ("TRO") enjoining the recording of the deed for at least 14 days, the deed for the Property was recorded. *Compare* (Doc. 1-4) (Aug. 7, 2018 TRO issued by the Hamilton County Court of Common Pleas), *with* (Doc. 7, Galasso Decl. ¶ 22).

On August 9, 2018, Seller, through Mr. Galasso, sent Plaintiff, addressed to Mr. Birkla, a letter regarding the Plaintiff Contract. (Doc. 5-1 PageID 287). It reads:

> Our firm represents Cincinnati Terrace Plaza, LLC. Reference is made to the Membership Interest Purchase Agreement dated June 1, 2018 between Cincinnati Terrace Plaza, LLC and Cincinnati Development III, LLC and to the Agreement Granting Right of First Refusal and Right to Terminate ("Agreement") of between Cincinnati Terrace Plaza, LLC and Cincinnati Development III, LLC.

> The "Inspection Period" under the Membership Interest Purchase Agreement expired on June 30, 2018. Subsequent to the expiration of the Inspection Property, the above referenced property was conveyed to a third-party on August 1, 2018. It is our understanding that suit has been initiated by Cincinnati Development III, LLC in which it takes the position that the Inspection Period does not expire until August 10, 2018. To the extent such Inspection Period is determined to be August 10, 2018, this correspondence shall serve as written notice of termination pursuant to Paragraph 3 of the Agreement.

*Id.*

On August 10, 2018, Plaintiff filed an Amended Complaint in state court to include Buyer as a defendant and obtained an amended TRO. (Docs. 1-6, 1-7, 1-8). On August 17, 2018, Seller and Buyer removed to this Court. (Doc. 1). That same day, Lender's mortgage and assignment of rents were recorded in the Hamilton County Recorder's Office. (Doc. 67 ¶ 9 PageID 1794).

### d. Post-August 2018

On November 5, 2019, Lender file a complaint in foreclosure against Buyer in the Court of Common Pleas for Hamilton County case number A 1905289 alleging that Buyer defaulted on its loan for the Property in July 2019. (Doc. 50-1). On October 14, 2020, a magistrate judge issued a decision granting Lender's motion for summary judgment and finding that Lender is entitled to have the mortgage foreclosed. (Hamilton County Court of Common Pleas, case number A 1905289, Oct. 14, 2020 docket entry). On March 11, 2021, the presiding state court judge adopted the magistrate judge's decision. (*Id.*, March 11, 2021 docket entry).

### e.  Procedural Posture

Plaintiff's Amended Complaint brings eight causes of actions: declaratory judgment; fraudulent transfer; breach of contract; breach of implied duty of good faith and fair dealing; promissory estoppel; equitable estoppel; tortious interference with contract; injunctive relief; and specific performance. (Doc. 5). Buyer, Seller, and Lender each filed Answers. (Docs. 13, 31, 70).

Buyer filed counterclaims and crossclaims against Plaintiff and Seller, each for declaratory judgment and quiet title (Doc. 13), and Plaintiff and Seller filed Answers (Docs. 17, 18). Lender filed a counterclaim against Plaintiff for declaratory judgment, (Doc. 67), and Plaintiff filed an Answer (Doc. 70).

The parties filed their respective Motions for Summary Judgment between December 2018 and March 2019 with the responsive briefing complete in May 2019. (Docs. 21, 26, 27, 30, 34, 38, 39, 40, 41, 43). In May 2019, the Court scheduled a settlement conference to take place in June 2019. The settlement conference was unsuccessful and, two-weeks after the settlement conference, Plaintiff filed its Motion to Strike and the responsive briefing thereto was complete in August 2019. (Docs. 44, 45, 46). In October 2019, Buyer's prior counsel moved to withdraw. (Doc. 48). The Court held a hearing on that motion in November 2019, and the Court permitted new counsel to enter an appearance in December 2019. (Doc. 53). Also in December 2019, Lender filed a Motion to Intervene. (Doc. 52). The Court held a status conference in February 2020. After that conference, Buyer filed a Motion for Leave to Amend its Counterclaim (Doc. 62) and the responsive briefing thereto was complete in May 2020. In June 2020, the Court granted Lender's Motion to Intervene and denied Buyer's Motion for Leave to Amend.

17

(Docs. 66, 69). The next month, Lender filed an Answer and a Counterclaim. (Doc. 70). From September 2020 through December 2020, the parties again engaged in settlement discussions. However, those discussions were ultimately unsuccessful.

### f. Motions for Summary Judgment

Plaintiff moves for partial summary judgment on its claim for breach of contract, its request for specific performance, and the question of whether Buyer is a bona fide purchaser for value. (Doc. 21). Buyer moves for summary judgment on all of Plaintiff's claims against Buyer. (Doc. 34). Seller moves for summary judgment on all of Plaintiff's claims against Seller. (Doc. 39). Lender did not file responses to any of the currently pending motions.

## III. <u>ANALYSIS</u>

### a. Standard of Review

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The movant has the burden of showing that no genuine issues of material fact are in dispute. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986); *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 811 (6th Cir. 2011). The evidence, together with all inferences that can permissibly be drawn therefrom, must be read in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 585-87; *Provenzano*, 663 F.3d at 811.

The movant may support a motion for summary judgment with affidavits or other proof or by exposing the lack of evidence on an issue for which the nonmoving party will

bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). In responding, the nonmoving party may not rest upon the pleadings but must go beyond the pleadings and "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). The Court's task is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. A genuine issue for trial exists when there is sufficient "evidence on which the jury could reasonably find for the [nonmoving party]." *Id.* at 252.

These standards upon which the court evaluates motions for summary judgment do not change simply because the parties present cross-motions. *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991). Rather, "[w]hen reviewing cross-motions for summary judgment, the court must evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the nonmoving party." *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994) (citing *Taft Broad. Co.*, 929 F.2d at 248).

### b. Breach of the Plaintiff Contract

In moving for summary judgment on a breach of contract claim, a plaintiff in Ohio[15] must establish: (1) the existence of a contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damage or loss to the plaintiff. *Thomas v. Publishers Clearing House, Inc.*, 29 F. App'x 319, 322 (6th Cir. 2002) (citing *Doner v. Snapp*, 98 Ohio App.3d 597, 649 N.E.2d 42, 44 (1994)).

---

[15] Ohio law applies to this matter. *See, e.g.*, (Docs. 26, 30, 41, 43); *see also* (Doc. 5-1 Exh. A § 16) ("This [Plaintiff Contract] shall be governed by and construed in accordance with the internal laws of the State of Ohio without giving effect to any choice or conflict of law provision or rule that would cause the application of laws of any other jurisdiction."); (Doc. 21-6 § 15) ("This [Buyer Contract] shall be governed by and construed in accordance with the internal laws of the State of Ohio without giving effect to any choice or conflict of law provision or rule that would cause the application of laws of any other jurisdiction.").

Plaintiff and Seller agree that the Plaintiff Contract exists, the Plaintiff Contract is enforceable, Plaintiff's deposit of the earnest money in an escrow account by June 6, 2018 was not a condition precedent[16] to the Plaintiff Contract, and Seller never provided Plaintiff a right of first refusal after Seller entered into the June 12, 2018 Buyer Contract. (Doc. 21 PageID 538); (Doc. 26 PageID 772); (Doc. 38-1 PageID 1287); (Doc. 41 PageID 1380-82); (Doc. 43 PageID 1397).

The Plaintiff Contract did not include the name of Plaintiff's counsel to act as "Escrow Agent" with Mr. Galasso and the signature on the Plaintiff Contract for the collective "Escrow Agent" contains only Mr. Galasso's signature. (Doc. 5-1 Exh. A § 2, PageID 267). The parties did not finalize a formal escrow agreement and Plaintiff did not deposit earnest money into an escrow account by June 6, 2018. Rather, Plaintiff deposited $150,000.00 into an escrow account maintained by Commonwealth Land Title Insurance Company on August 6, 2018, the same day that it learned that Seller sold the Property. (Doc. 21-1, Birkla Decl. ¶¶ 13, 22). Additionally, the Plaintiff Contract provides:

> If Seller agrees to sell the Property (whether by transfer of title to the Property or effectuating a transfer by forming an entity to hold title to the Property and transferring its ownership interests) to a third party before the expiration of the Inspection Period, Seller shall provide notice of the closing to P[laintiff] and P[laintiff] may purchase the Property upon the same terms and conditions as the third party buyer's, by wiring funds and closing on the same day that the third party buyer is scheduled to close.

(Doc. 5-1 Exh. A PageID 273).

Seller argues that Plaintiff failed to perform its obligation to pay the earnest money deposit and Plaintiff responds that Seller refused to reply to its request to jointly complete

---

[16] "[A] condition precedent is one that is to be performed before the agreement becomes effective. It calls for the happening of some event, or the performance of some act, after the terms of the contract have been agreed on, before the contract shall be binding on the parties." *Mumaw v. W. & S. Life Ins. Co.*, 97 Ohio St. 1, 11, 119 N.E. 132, 135 (1917).

the sub-transaction relating to the earnest money escrow account. Plaintiff argues that Seller breached the Plaintiff Contract by failing to provide Plaintiff notice of the Buyer Contract and the option to purchase the Property upon the same terms as found in the Buyer Contract. Seller responds that there is no notice breach, because it was only required to offer Plaintiff notice and a right of first refusal if Seller actually sold the Property to a third party during the Inspection Period. Stated differently, Seller responds that it was not required to offer Plaintiff notice and a right of first refusal if, during the Inspection Period, Seller entered into an agreement to sell the Property to a third party after the Inspection Period.

Seller asserts that Plaintiff failed to pay the earnest money "in the time or manner required by the" Plaintiff Contract and "[a]ll [Plaintiff] had to do was simply write in the name of its counsel, then pay the earnest money within five days." (Doc. 39, PageID 1348 n.10); (Doc. 43 PageID 1398). The Plaintiff Contract established a time by which Plaintiff was to deposit the earnest money into an escrow account, *i.e.*, June 6, 2018. (Doc. 5-1 Exh. A § 2(c)). Plaintiff and Seller, however, were to agree together, through their respective counsel, on a bank at which to open an escrow account for Plaintiff to make the deposit. *Id.* Seller's statement that Plaintiff merely had "to write in the name of its attorney and write a check – actions solely within its exclusive control" is thus inaccurate. (Doc. 43 PageID 1398).

It is not clear if Plaintiff requested approval from Seller to finalize the escrow terms for the existing Plaintiff Contract or if Plaintiff requested an entirely new contract with additional terms beyond finalizing the Plaintiff Contract's incomplete escrow terms. The July 9, 2018 email from Plaintiff's attorney to Mr. Galasso requests that Mr. Galasso

review a revised version of the Plaintiff Contract and a Blackline document indicating the difference between the Plaintiff Contract and the revised version. (Doc. 21-7). The revised version included a June 11, 2018 effective date; an agreement that Plaintiff would deposit earnest money into an escrow account with Commonwealth Land Title Insurance Company; a statement that the Commonwealth Land Title Insurance Company would serve as the Escrow Agent, *i.e.*, not Mr. Galasso and an attorney of Plaintiff's choosing; and complete exhibits. (*Id.*). Plaintiff's attorney stated that Plaintiff had not reviewed the documents and reserved the right to make any additional changes. (*Id.*). Plaintiff's reliance on a June 14, 2018 email from Mr. Galasso to another one of Plaintiff's attorneys provides no clarity on Plaintiff's performance under the Plaintiff Contract concerning its attempts to finalize the escrow account or deposit the earnest money. (Doc. 7-6). The Court finds that there are genuine issues of fact regarding Plaintiff's performance under the Plaintiff Contract, regarding depositing the earnest money in an escrow account, such that summary judgment on Plaintiff's breach of contract claim is not proper.

### c. Buyer's Bona Fide Purchaser Status

In Ohio, a bona fide purchaser for value is a purchaser who takes property for valuable consideration, in good faith, and absent notice of any adverse claims. *Tonito's, Inc. v. S&J Ents., Inc.*, 2010-Ohio-776, ¶ 16. Whether a purchaser is a bona fide purchaser is determined at the time the purchase is consummated, or at the latest, at the time of payment. *Riser Foods Co. v. Shoregate Properties, LLC,* No. 1:09 CV 489, 2011 WL 3921850, at *6 (N.D. Ohio Sept. 7, 2011).

Notice of adverse claims may be actual or constructive. *Id.* at ¶ 17. A party will be deemed to have constructive notice of an adverse claim if that party has knowledge of

facts that would induce a prudent person to make an inquiry by which that party would have or could have obtained knowledge of the adverse claim. *Id.*; *accord Riser Foods Co.,* 2011 WL 3921850, at *6 (quoting *Wayne Bldg. & Loan Co. of Wooster v. Yarborough*, 11 Ohio St. 2d 195, 202, 228 N.E.2d 841, 847 (1967)). "Ohio courts have consistently held that '[o]ne having notice of facts which would put a prudent man on inquiry is chargeable with knowledge of other facts he might have discovered by *diligent* inquiry. Whatever is notice enough to excite the attention of a prudent man and put him on his guard is notice of everything to which such inquiry might have led [.]'" *Tonito's, Inc.*, at ¶ 18 (quoting *Hightower v. Reiger*, No. 54447, 1988 WL 112525, at *2 (Ohio Ct. App. Oct. 6, 1988) (emphasis added)).

The Court directs the parties' attention to its prior discussion of the conflict between Mr. Unger's and Mr. Friedman's declarations. *See supra* I(b). In addition to the Court's prior discussion, the Court notes that Mr. Friedman does not state who he followed up with regarding his inquiry and who advised him that the Buyer Contract was the only contract on the Property. Recognizing the possible effect of the resolution of the factual issues regarding the Plaintiff Contract on this issue, and assuming without deciding that Plaintiff ultimately prevails on its breach of contract claim,[17] the Court finds that there is a question of fact regarding whether Buyer had notice of the Plaintiff Contract.[18] Summary judgment is thus not warranted.

---

[17] And, to be clear, the Court does not decide that issue at this juncture.

[18] The Court, at this time, is not inclined to reach Plaintiff's argument that the transaction itself provides grounds for summary judgment on the bona fide purchaser issue. *See* (Doc. 38 PageID 1270). *Compare* (Doc. 21 PageID 545-46), *and* (Doc. 30 PageID 1060-62), *and* (Doc. 38 PageID 1274-76), *with* (Doc. 27 PageID 978-79), *and* (Doc. 40 PageID 1366-68).

### d. Remaining Claims

Plaintiff alleges that it is entitled to specific performance on its breach of contract claim and requests that the Court order Seller to convey the Property in accordance with its duties under the Plaintiff Contract after setting aside the sale to Buyer and unwinding the Property's conveyance. (Doc. 5 ¶¶ 128-130). Plaintiff alleges a claim for fraudulent transfer of the Property by Seller and seeks to unwind the sale to Buyer. (*Id.* ¶¶ 68-77). Plaintiff also alleges claims for declaratory judgment, breach of implied duty of good faith and fair dealing, promissory estoppel, equitable estoppel, tortious interference with contract, and injunctive relief. (*Id.* ¶¶ 60-67, 86-97, 98-108, 109-116, 117-127). Buyer and Seller move for summary judgment on all of Plaintiff's claims against them (Docs. 34, 39). Summary judgment on the remaining claims is not appropriate in light of the issues of fact regarding the Plaintiff Contract and Buyer's notice of the Plaintiff Contract.

### IV. Motion to Strike Jury Demand

Seller requests that the Court strike Plaintiff's jury demand and argues that the jury waiver provision contained in the Plaintiff Contract controls. (Docs. 9, 16). Plaintiff admits that the Plaintiff Contract contains a jury waiver, but argues that it is not precluded from trying its claims against Buyer to a jury. (Doc. 14).

The Seventh Amendment of the United States Constitution holds that, "[i]n suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." U.S. Const. amend. VII. Federal Rule of Civil Procedure 39 provides that, if a jury trial is demanded, it must be provided unless the parties stipulate to a nonjury trial or "the court, on motion or on its own, finds that on some or all of those issues there is no federal right to a jury trial." FED. R. CIV. P. 39(a).

"It is clear that the parties to a contract may by prior written agreement waive the right to trial by jury." *K.M. C. Co. v. Irving Trust Co.*, 757 F.2d 752, 755 (6th Cir. 1985). Here, the parties have neither filed a stipulation to a nonjury trial nor stipulated to one on the record. *See* FED. R. CIV. P. 39(a)(1). Additionally, the Plaintiff Contract provides:

> Each party acknowledges and agrees that any controversy which may arise under this Agreement is likely to involve complicated and difficult issues and, therefore, each such party irrevocably and unconditionally waives any right it may have to a trial by jury in respect of any legal action arising out of or relating to this Agreement or the transactions contemplated hereby.

(Doc. 5-1 Exh. A § 16(ii)). In light of Plaintiff's concession that the Plaintiff Contract contains a jury waiver and because Plaintiff does not allege that its consent to the jury waiver provision was not knowing, voluntary, or intentional, the Court finds that the waiver is applicable with respect to all of Plaintiff's claims against Seller. *See K.M. C. Co.*, 757 F.2d at 755. Turning to Plaintiff's claims against Buyer—tortious interferences with a contract and the remedy of specific performance—and the scope of the Plaintiff Contract's jury waiver provision, the Court finds that Plaintiff's claims, in this legal action, relate to the Plaintiff Contract or the transactions contemplated by the Plaintiff Contract such that extension and application of the Plaintiff Contract's jury waiver provision to the claims against Buyer is proper. *See JPMorgan Chase Bank, N.A. v. Winget*, No. 08-13845, 2017 WL 6059274, at *2 (E.D. Mich. Dec. 7, 2017) (citing *Raceday Center, LLC v. RL BB Financial, LLC*, 2012 WL 12810505 (E.D. Tenn. Aug. 16, 2012)). Also, Plaintiff's request for specific performance of the Plaintiff Contract does not give rise to a right of a jury trial as specific performance is an equitable remedy. *See Talent Tree Crystal, Inc. v. DRG, Inc.*, No. 1:04-CV-875, 2005 WL 8169098, at *3 (W.D. Mich. Aug. 11, 2005).

## V.    <u>CONCLUSION</u>

In light of the foregoing, it is hereby **ORDERED** that:

- Buyer's Motion to Strike (Doc. 28) is **DENIED in part** with respect to paragraph 26 of Mr. Birkla's initial declaration and Exhibit A-11 and **DENIED in part as moot** with respect to paragraphs 24 and 25 of Mr. Birkla's initial declaration and Exhibits A-8, A-9, and A-10.

- Plaintiff's Motion to Strike (Doc. 44) is **DENIED**.

- Plaintiff's Motion for Partial Summary Judgment (Doc. 21) is **DENIED**.

- Buyer's Motion for Summary Judgment (Doc. 34) is **DENIED.**

- Seller's Motion for Summary Judgment (Doc. 39) is **DENIED.**

- Seller's Motion to Strike Jury Demand (Doc. 9) is **GRANTED**. The trial currently set to begin on April 26, 2021 will remain set and will be a trial to the bench. In addition, in lieu of jury instructions, the parties are to submit proposed findings of facts and conclusions of law, and the Court will provide more information and a deadline for such submissions during the March 25, 2021 follow up status conference.

**IT IS SO ORDERED.**

_/s Michael R. Barrett_____
Michael R. Barrett, Judge
United States District Court