# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

Cincinnati Development III, LLC,

    Plaintiff,

        v.

Cincinnati Terrace Plaza, LLC, et al.,

    Defendants.

Case No. 1:18-cv-00586

Judge Michael R. Barrett

## OPINION AND PARTIAL ORDER

This matter came before the Court on a bench trial held from April 26, 2021 to April 29, 2021. Prior to the bench trial, the parties submitted Proposed Findings of Facts and Conclusions of Law. After the close of evidence, the parties submitted written closing arguments.

In the Court's first Opinion and Partial Order, the Court determined the contractual rights and obligations of Plaintiff Cincinnati Development III, LLC ("First Buyer"), Defendant Cincinnati Terrace Plaza, LLC's ("Seller"), and Defendant Cincinnati Terrace Associates, LLC ("CTA" or "Second Buyer"), as those rights and obligations relate to the real property located at 15 West Sixth Street Cincinnati, Ohio 45202 ("Property"), formerly known as the Terrace Plaza Hotel. The Court provided findings of facts and conclusions of law, and will not repeat the same herein unless necessary to address the parties' arguments regarding the Court's damages determination. The Court remains sitting as the finder of fact and is permitted to draw reasonable inferences from the credible testimony and exhibits adduced at trial. The Court has again considered that evidence,

along with the parties' pre- and post-trial submissions, and makes findings of fact and conclusions of law in accordance with Federal Rule of Civil Procedure 52(a).

## I. BACKGROUND

The Court previously held that Seller breached the June 1, 2018 Membership Interest Purchase Agreement for the sale of the Property ("2018 Purchase Agreement") and Agreement Granting Right of First Refusal ("ROFR") between Seller and First Buyer by failing to offer First Buyer its ROFR; Seller's actions related to its breach of contract constituted a breach of the implied duty of good faith and fair dealing; and First Buyer's claim against Seller under the Ohio Uniform Fraudulent Transfer Act failed because First Buyer did not establish standing under that Act. With respect to First Buyer's breach of contract claim against Seller, the Court previously held that First Buyer established that it suffered damages in an amount to be determined, and the Court explained that it would issue a separate Opinion and Partial Order addressing the issue of the appropriate award of damages on a later date. The Court will do so now.

## II. FINDINGS OF FACT[1]

The purchase price for the Property in the 2018 Purchase Agreement was $9.5M. Pursuant to Section 11 of the 2018 Purchase Agreement, titled "Failure to Close," in the event that the parties failed to close on the Property due to Seller's breach, First Buyer, at its option, may either elect to enforce the terms of the 2018 Purchase Agreement by action for specific performance, and/or exercise any

---

[1] The labels and headings included in this Opinion and Partial Order are not controlling. *Cf. Cordovan Assoc., Inc. v. Dayton Rubber Co.*, 290 F.2d 858, 860 (6th Cir. 1961) (citing *Bogardus v. Comm'r of Internal Revenue*, 302 U.S. 34 (1937)). To the extent a finding of fact constitutes a conclusion of law, the Court adopts it as such, and vice versa. *Meyer v. Bank of Am., N.A.*, No. 2:18-CV-218, 2021 WL 868587, at *1 n.2 (S.D. Ohio Mar. 9, 2021).

other right or remedy available to it at law or in equity or terminate the agreement by notice to Seller and receive a refund of the earnest money plus reimbursement from Seller not to exceed $50,000.00.

Pursuant to Section 2 of the 2018 Purchase Agreement's ROFR, titled "Right of First Refusal," if Seller agrees to sell the Property to a third-party before the expiration of the Inspection Period, Seller has an obligation to provide notice of the closing to First Buyer. First Buyer would then have to purchase the Property by matching the third-party's terms and conditions, including purchase price, provided that the matching funds are paid prior to third-party's scheduled closing. If First Buyer does not so match, First Buyer's ROFR terminates, and Seller may terminate the purchase agreement in accordance with Section 3 of the ROFR. Section 3 of the 2018 Purchase Agreement's ROFR, titled "Right to Terminate," in turn, provides that Seller may terminate the 2018 Purchase Agreement at any time during the Inspection Period, by providing First Buyer with written notice of termination ("Termination Notice") and within ten days of Seller's delivery of the Termination Notice, Seller shall pay $100,000.00 to First Buyer ("Termination Fee").[2] Section 4 of the 2018 Purchase Agreement's ROFR, titled "Termination Fee," states that the Termination Fee shall serve as liquidated damages under the 2018 Purchase Agreement, and shall be First Buyer's sole remedy for Seller's failure to perform under the 2018 Purchase Agreement.

During the Inspection Period under the 2018 Purchase Agreement, First Buyer incurred out-of-pocket expenses of at least $200,000.00, a total that includes First

---

[2] During the negotiation of the ROFR, First Buyer and Seller bargained for the Termination Fee. In doing so, First Buyer, for its part, considered the expenses that it would incur while performing its due diligence during the Inspection Period. The Termination Fee was designed, in part, to offset any sunk development expenses in the event that the parties did not close on the 2018 Purchase Agreement.

Buyer's payment for inspections of the Property; the time that First Buyer spent assembling the right government strategies, architecture, and engineering teams; the work that those teams spent putting their respective development plans together; and the time that Anthony Birkla[3] spent trying to obtain the tax incentive package from the City of Cincinnati.

The purchase price for the Property in the June 13, 2018 Membership Interest Purchase Agreement for the sale of the Property between Seller and Second Buyer ("Second Buyer Contract") was $11M. The actual sale price of the Property, from Second Buyer to Seller, was $10.4M, as Seller paid a $600,000.00 concession to Second Buyer on Angelo Slabakis's[4] behalf.

First Buyer, by filing this lawsuit, has elected the latter option in Section 11 of the 2018 Purchase Agreement, *i.e.*, to enforce the terms of the 2018 Purchase Agreement and exercise its legal right to seek damages.[5] Further, Seller did not offer First Buyer its ROFR. Instead, Mr. Birkla first learned of the sale of the Property, and of Second Buyer, on an August 3, 2018 phone call, after the sale of the Property.

### III. CONCLUSIONS OF LAW[6]

Generally, a party injured by a breach of contract is entitled to its expectation interest, or its interest in having the benefit of its bargain by being put in as good a position as it would have been in had the contract been performed. *Anadarko E & P*

---

[3] Mr. Birkla controls and formed First Buyer, an Ohio LLC, for the purpose of acquiring the Property.

[4] Ultimately, Mr. Slabakis obtained 20% of Second Buyer and Ezra Unger obtained 80% of Second Buyer.

[5] Although First Buyer also sought specific performance, the Court previously held that Second Buyer is a bona fide purchaser and First Buyer is thus not entitled to specific performance.

[6] Though not contested, the Court has jurisdiction over this matter and venue is proper. *See* 28 U.S.C. §§ 1332, 1391(b)(2).

*Co. LP v. Northwood Energy Corp.*, 970 F. Supp. 2d 764, 775 (S.D. Ohio 2013) (citing *Bos. v. Sealmaster Indus.*, 2004-Ohio-4278, ¶ 30). More specifically, for a breach of a real estate contract, the proper measure of damages is the difference between the original contract price and the fair market value of the property at the time of the breach. *Walters v. Goddard*, 2020-Ohio-870, ¶ 8; *MacDonald v. Authentic Invs., L.L.C.*, 2016-Ohio-4640, ¶ 41; *cf. McCarty v. Lingham*, 111 Ohio St. 551, 146 N.E. 64 (1924). "Fair market value is generally defined as that price which would be agreed upon between a willing seller and a willing buyer in a voluntary sale on the open market." *Walters*, 2020-Ohio-870, ¶ 13 (quoting *Loft v. Sibcy-Cline Realtors*, No. C-880446, 1989 WL 149667, at *3 (Ohio Ct. App. Dec. 13, 1989)). Further, a plaintiff to a real estate contract is entitled to special damages so long as those damages are a reasonable and natural consequence of the breaching party's actions, and were reasonably contemplated by the breaching party at the time of contracting. *See, e.g.*, *Brint v. Doyon*, 7 Ohio Law Abs. 427, 427 (Ohio Ct. App. 1929); *see also McCullough v. D. Waldenmeyer, Inc.*, 21 O.O.2d 124, 185 N.E.2d 806, 807-08 (Ohio Com. Pl. 1961).

  First Buyer had the Property under contract for $9.5M. Second Buyer had the property under contract for $11M and closed on the Property for $10.4M with a $600,000.00 concession to one of Second Buyer's two owners. $11M is the fair market value of the Property. *See Walters*, 2020-Ohio-870, ¶¶ 14, 19; *see also 2454 Cleveland, LLC v. TWA, LLC*, 2020-Ohio-362, ¶¶ 17, 22. The difference between the 2018 Purchase Agreement and the fair market value of the property at the time of Seller's breach is $1.5M. Additionally, First Buyer incurred out-of-pocket

5

expenses of at least $200,000.00 during the Inspection Period under the 2018 Purchase Agreement. The appropriate award of damages to compensate First Buyer—for the value that it lost from Seller's breach of the 2018 Purchase Agreement and the reasonable and predictable expenses that First Buyer made in its efforts to develop the Property—is $1.7M. *See Walters*, 2020-Ohio-870, ¶ 8; *MacDonald*, 2016-Ohio-4640, ¶ 41; *see also McCullough*, 21 O.O.2d 124, 185 N.E.2d at 807-08; *Brint*, 7 Ohio Law Abs. at 427.

First Buyer's request for expectancy damages based on a successful venture by First Buyer and request for compensatory damages based on an Avison Young appraisal are each too remote and speculative. *See Walters*, 2020-Ohio-870, ¶ 7 ("Damages for breach of contract must be established with enough evidence showing damages in an amount that can be ascertained with reasonable certainty and not based on speculation.") (citing *Father's House Internatl., Inc. v. Kurguz*, 2016-Ohio-5945, ¶ 39, 71 N.E.3d 711, 722). Moreover, First Buyer's requests for punitive damages and attorney's fees are not permitted, as First Buyer's claim against Seller under the Ohio Uniform Fraudulent Transfer Act failed, First Buyer's breach of the implied duty of good faith and fair dealing claim does not sound in tort, and Seller's breach is not connected with an independent tort and fraudulent conduct. *See Lucarell v. Nationwide Mut. Ins. Co.*, 2018-Ohio-15, 152 Ohio St. 3d 453, 462-63, 97 N.E.3d 458, 467-68; *see also Thompson v. Citizens Nat'l Bank*, No. 1:14-CV-1197, 2016 WL 7238835, at *5-8 (N.D. Ohio Dec. 15, 2016).

Finally, Seller's argument that First Buyer's damages are limited to $100,000.00, per Section 4 of the 2018 Purchase Agreement's ROFR, is mistaken.

6

A review of the entire 2018 Purchase Agreement and its ROFR, and not just Section 4 of the ROFR, makes clear that the contemplated $100,000.00 Termination Fee must come after a written Termination Notice provided to First Buyer from Seller. Payment of the Termination Fee in the 2018 Purchase Agreement's ROFR thus contemplates Seller terminating the 2018 Purchase Agreement. Stated otherwise, the Termination Fee applies only to a termination. Seller did not terminate the 2018 Purchase Agreement, via a written Termination Notice and accompanying Termination Fee within 10 days of that Termination Notice or otherwise. Rather, Seller breached the 2018 Purchase Agreement when it failed to offer First Buyer its ROFR. The 2018 Purchase Agreement's ROFR's liquidated damages clause concerning Seller's termination does not apply to Seller's breach. The 2018 Purchase Agreement's Section 11, concerning Seller's breach of that agreement, applies to Seller's breach.

## IV. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Seller shall pay First Buyer damages in the amount of $1,700,000.00.

**IT IS SO ORDERED.**

_/s Michael R. Barrett_____
Michael R. Barrett, Judge
United States District Court